IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                Case No. 3:09 CR 182

-vs-                                     O R D E R

JOHN E. GRAY, et al.,

                Defendant.

KATZ, J.

On March 22, 2010, the Court conducted a hearing on multiple pre-trial motions. At the conclusion of the hearing, the Court established a post-hearing briefing schedule. Pending before the Court are the following motions: (1) Defendant Gray's motion to suppress; (2) Defendant Gray's motion to suppress regarding *Garrity v. New Jersey*; (3) Defendant Schmeltz's motion to suppress; and (4) Defendant Telb's motion to suppress. Also before the Court are the post-hearing memoranda by all parties.

### DEFENDANTS' MOTIONS TO SUPPRESS

The Defendants' motions can be separated into the following groups: (1) suppression of statements on the basis of immunity under *Garrity v. New Jersey*, 385 U.S. 493 (1967); and (2) suppression of the FBI 302 reports due to inaccuracy, lack of electronic recording and lack of Miranda warnings.

*A. Suppression Under Garrity*

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." In *Garrity v. New Jersey*, the government sought to offer the statements of officers under investigation for their conduct related to the fixing of traffic citations. Prior to giving statements, the officers were advised "1) that anything he said might be used

against him in any state criminal proceeding; (2) that he had the privilege to refuse to answer if the disclosure would tend to incriminate him; but (3) that if he refused to answer he would be subject to removal from office." 385 U.S. at 494. The statements were presented during subsequent criminal proceedings and the officers were convicted in state court of conspiracy to obstruct justice. The Supreme Court held such statements were coerced and prohibited from use to convict the officers.

> *Garrity* remains in force and has been characterized by the Sixth Circuit as follows:
>
> As a matter of Fifth Amendment right, *Garrity* precludes use of public employees' compelled incriminating statements in a later prosecution for the conduct under investigation. *Garrity*, 385 U.S. at 500, 87 S. Ct. 616. However, *Garrity* does not preclude use of such statements in prosecutions for the independent crimes of obstructing the public employer's investigation or making false statements during it. *See Veal,* 153 F.3d at 1243-44.

*McKinley v. City of Mansfield*, 404 F.3d 418, 427 (6th Cir. 2005), *cert. denied,* 546 U.S. 1090 (2006).

In the present case, Defendants generally contend (1) there is immunity under *Garrity*; (2) any subsequent waiver executed is invalid; and (3) even if the waiver is deemed valid, it is retrospective. Additionally, those Defendants who gave statements to the FBI post-2004 and were not retired, argue those interviews were compelled and subject to the protections of *Garrity* immunity.

The government concedes the statements made in the course of the internal investigation in 2004 constitute compelled testimony subject to *Garrity*. It is the government's position that *Garrity* immunity does not apply to the charges on false statements. The government asserts it is the Defendants who bear the burden of proof on whether the waivers were voluntary, knowing and

2

intelligently made. Finally, the government disputes the 2008 interviews with the FBI are subject to *Garrity* as they were compelled but voluntary.

Generally, it is incumbent upon the party seeking suppression of evidence to shoulder the burden of proof to establish a violation of a constitutional right. *United States v. Jones,* 260 Fed. Appx. 769, 772 (6th Cir. 2008), quoting *United States v. Rodriquez-Suazo*, 346 F.3d 637, 743 (6th Cir. 2003).

The first question to be addressed concerns post-2004 interviews and the applicability of *Garrity* thereto. The Defendants base a compulsion to speak upon the Collective Bargaining Agreement and the Rules and Regulations of the Lucas County Sheriff's Department. As these apply to internal investigations, the compulsion to submit to questioning under those situations is clear. In contrast, there is no evidence or testimony to establish the post-2004 interviews were compelled. Stated differently, the Defendants have not demonstrated these interviews were not voluntary. Thus, *Garrity* does not apply to post-2004 interviews.

The second question addresses the issue of waiver. On this issue, the Court considers the Sixth Circuit's guidance:

> The government, as a general rule, may not introduce a defendant's incriminating statement against him at trial unless it first proves that there was a voluntary, knowing, and intelligent waiver of the accused's core rights under the Constitution. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The government bears the initial burden to show the waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). The inquiry as to whether there was a valid waiver has two components. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Whether the waiver in fact occurred is determined by the totality of the circumstances. *Id.* A court is entitled to consider as

>part of this "totality" whether, and to what extent, the defendant has experience in the criminal justice system. *See United States v. Meirovitz,* 918 F.2d 1376, 1379 (8th Cir.1990); *United States v. Cruz Jimenez,* 894 F.2d 1, 8 (1st Cir.1990).

*United States v. Wilkerson*, 76 Fed. Appx. 657, 659-660, 2003 WL 22205068 **2 (6th Cir. 2003).

The government provided the Court with copies of the waivers executed by Defendants Gray and Schmeltz in 2008. The government contends each interview in 2008 was voluntary and that each of these officers chose to speak with the FBI; Gray spoke to the FBI twice. At the March 22nd hearing, counsel for Schmeltz conceded the waiver bore the Defendant's signature and that Schmeltz read it at the outset of the interview in 2008. (Tr. at 29.)

>The language of the waiver is also illuminating:
>
>>I [Named Defendant] fully understand that some or all of my prior statements regarding allegations of use of excessive force against Carlton Benton could be considered as having been given under administrative compulsion and therefore could not be used against me in any criminal investigation or proceeding.
>>Nevertheless, I believe that all pertinent information should be provided to United States law enforcement officials in their investigation concerning these allegations of abuse of inmates. I therefore knowingly, intelligently and voluntarily waive my constitutional and statutory right not to have those statements used against me, and I voluntarily give my consent that all of my prior statements be furnished to special agents of the Federal Bureau of Investigation, knowing that these prior statements may be used against me in any criminal investigation and proceeding regardless of whether or not I take the witness stand in any subsequent trial.

(Gov't Resp., attachments I and II at Doc. No. 76.)

Schmeltz and Gray were law enforcement officers, each with over twenty years experience. They were asked to speak to the FBI, signed the waivers and gave one or more interviews. The wording of the waiver, entitled "CONSENT FORM" is clear and straightforward. A reasonable and objective reading of this form informs the individual of his rights and how the

4

prior statements may be utilized against him. Under a totality of the circumstances analysis, the government has met its burden to establish valid waivers.

Finally, *Garrity* does not preclude the government's use of these statements even without a waiver of the false statement charges. *McKinley, supra*. A nearly identical situation was presented in *United States v. Veal*, 153 F.3d 1233, 1243-44 (11th Cir. 1998), *cert. denied*, 526 U.S. 1147 (1999), where the court addressed the issue of whether statements suppressed in a prior civil rights trial under *Garrity* could be admitted in a subsequent trial on charges of obstruction of justice. After noting the Supreme Court's refusal to allow the Fifth Amendment to protect false statements, the panel in *Veal* observed this prohibition would logically extend to statements made to government agents in the course of an investigation. The Court then reviewed other circuit decisions in accordance in this view before holding:

> An accused may not abuse *Garrity* by committing a crime involving false statements and thereafter rely on *Garrity* to provide a safe haven by foreclosing any subsequent use of such statements in a prosecution for perjury, false statements, or obstruction of justice. . . . Although an accused may not be forced to choose between incriminating himself and losing his job under *Garrity*, neither *Garrity* nor the Fifth Amendment prohibits prosecution and punishment for false statements or other crimes committed while *making Garrity*-protected statements. Giving a false statement is an *independent* criminal act that occurs *when* the individual makes the false statement; it is *separate* from the events to which the statement relates, the matter being investigated. . . . *Garrity* protection is not a license to lie or to commit perjury.

*Id.* at 1243. (Emphasis in original.) Accordingly, the *Garrity* statements herein may be utilized as to the false statement charges.

*B. Remaining Arguments on Suppression*

Both Defendants Gray and Telb move to suppress statements made in 2008 as contained in the FBI 302 reports on the basis the statements were not recorded electronically. The argument as to the lack of an electronic recording as implicating constitutional protections has been rejected by the Sixth Circuit and other courts. *See United States v. Smith*, 319 Fed. Appx.381, 384, 2009 WL 899924 **3 (6th Cir. 2009) (no constitutional requirement to videotaping or audio taping interrogations regarding *"Mirandized"* statements). *See also Brown v. McKee*, 231 Fed. Appx. 469, 475 (6th Cir. 2007) ("Neither federal nor Michigan law requires suppression solely on the basis that a police interrogation was not electronically recorded."), *citing United States v Dobbins*, 165 F.3d 29, 1998 WL 598717 *4 (6th Cir. 1998) ; *United States v. Short*, 947 F.2d 1445, 1451 (10th Cir. 1991), *cert. denied*, 503 U.S. 989 (1992) (rejecting argument that police were required to have electronically recorded defendant's interrogation and noting the absence of any supporting case law). Therefore, the Defendants' arguments as to a lack of electronic recording are without merit.

Defendant Telb argues he was denied his constitutional rights as the circumstances surrounding his statements rise to the level of a custodial interrogation. As he was not advised of his rights, he moves to suppress his July 2008 statements made to the FBI.

The Sixth Circuit considers the following factors in assessing whether a custodial interrogation exists:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer

6

some questions.

*United States v. Crossley*, 224 F.3d 847, 861 (6th Cir. 2000), *citing Oregon v. Mathiason*, 429 U.S. 492 (1977).

Telb argues the purpose of the questioning was to zero in on him as a target, hence Agent Russ's objective was to collect information to indict the Defendant. Agent Russ's testimony was that he conducted an investigation, spoke to a number of individuals including Defendant Telb. As the head law enforcement officer of the county with over twenty-five years of experience, the Defendant states he felt obligated to cooperate with the FBI. While Russ testified that he may have had "some suspicion" regarding Telb, this is too tenuous a connection to being a target to trigger a custodial interrogation. Considering the totality of the circumstances, the Defendant has not established any factor in favor of a custodial interrogation. Accordingly, he was not entitled to be advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). As the Defendant has not met his burden regarding suppression of his 2008 statement, his motion is not well taken.

## CONCLUSION

Based upon the foregoing, Defendants' motions to suppress (Doc. Nos. 61, 62, 63 and 65) are denied.

IT IS SO ORDERED.

      S/ *David A. Katz*
      DAVID A. KATZ
      U. S. DISTRICT JUDGE