IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

                       Plaintiff,               Case No. 3:09 CR 182

   -vs-

                                               MEMORANDUM OPINION
JOHN E. GRAY                                 AND ORDER
JAY M. SCHMELTZ
ROBERT E. MCBROOM
JAMES A. TELB,

                       Defendants.

KATZ, J.

Pending before the Court are multiple motions to *in limine*, specifically: (1) Telb's motion regarding evidence from his 2004 reelection campaign; (2) the government's motion to exclude reference to the nature and details of the victim's alleged crimes; (3) Defendant Schmeltz's motion regarding other crimes, wrongs or bad acts; and (4) Defendants' joint motion regarding expert testimony.

On July 8, 2010, the Court conducted oral argument on the motions *in limine*. For the reasons that follow, the motions are granted in part and denied in part.

**MOTION IN LIMINE STANDARD**

Motions *in limine* are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose. *See Jonasson v. Lutheran Child and Family Serv.*, 115 F.3d 436, 440 (7th Cir.1997). The court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984)

(federal district courts have authority to make *in limine* rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. (citations omitted). Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*. *See United States v. Connelly*, 874 F.2d 412, 416 (7th Cir.1989) (citing *Luce*, 469 U.S. at 41, 105 S.Ct. at 463) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1400- 1401 (N.D.Ill.1993).

## DISCUSSION

*A. The 2004 Reelection Campaign*

Defendant Telb seeks to preclude evidence or testimony regarding the 2004 reelection campaign under Fed. R. Evid. 403. (Doc. No. 115.) Telb argues that inclusion of such evidence would be prejudicial to him and outweigh any probative value. In contrast, the government asserts this evidence is probative of his motive to conceal the actions of Defendant Gray.

As noted by the government, "evidence tending to show motive, or the absence of motive, is always relevant, wide latitude being allowed in its admission." 22A C.J.S. CRIMINAL LAW § 922 (May 2010). At this juncture of the proceedings, the Court will deny Telb's motion on this issue, without prejudice, with leave to revisit this issue, if necessary, at trial.

*B. Reference at Trial to the Nature of Alleged Crimes*

The government moves to exclude the Defendants from referencing the reasons for Carlton Benton's incarceration. (Doc. No. 116.) Specifically, it is asserted the Defendants wish to put into play the nature and details of Benton's alleged crimes as character evidence. The government contends such evidence is irrelevant to the instant prosecution, that such evidence is not probative of a pertinent character trait, and inclusion of this evidence would be more prejudicial than probative.

The Defendants dispute they are offering this as character evidence but rather a statement as to why Benton was incarcerated in Lucas County constituting a legitimate reason for disclosing this information to the jurors. As Defendants concede, they do not offer evidence of Carlton Benton's alleged crimes to demonstrate his bad character, analysis under Fed. R. 404(a)(2) is unnecessary. They contend the absence of a statement as to why Benton was incarcerated will become problematic as medical records contain this information and that witnesses may inadvertently disclose this information. In addition, Defendants note that the same coroner's investigator assigned to Carlton Benton's autopsy was also an investigator in the two murders for which Benton had been arrested at the time of his detention in the Lucas County Jail.

Under Fed. R. Evid. 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Having reviewed the memoranda and arguments of the parties, this Court finds the alleged crimes are not relevant to the present charges against the Defendants. There is nothing to indicate Defendants Gray and Schmeltz were aware of the specific charges pending against Carlton Benton

3

at the time of the confrontation in the jail. Defendants' argument regarding the coroner's investigator and the possible relevance to the victim's alleged crime is without merit and weighs in favor of undue prejudice more than relevance. The Defendants' concern about references to the alleged crimes in medical or other documents is remedied through redaction of such references. Relevance regarding the reason for Benton's allegedly early discharge, such that the hospital staff learned about his alleged crimes, carries no greater weight than an alleged lack of health insurance. However, even assuming some relevance, the Court finds it is outweighed by the danger of unfair prejudice and that inclusion of this is tantamount to character evidence of the alleged victim. *See*, Fed. R. Evid. 404(a)(2) advisory committee's note, ("It [character evidence] tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.").

As the inclusion of Carlton Benton's alleged crimes would be more prejudicial than probative, the Court finds the government's motion well taken.

*C. Schmeltz's Character Evidence*

Defendant Schmeltz moves to exclude evidence of three incidents which the government has indicated it may seek to introduce at trial. At the July 8, 2010 hearing, the government agreed not to utilize these incidents in its case-in-chief. Therefore, the Court will grant Schmeltz's motion (Doc. No. 120) to preclude this Fed. R. Evid. 404(b) evidence on the condition that if the door is opened by the Defendant, the government has the right to raise this evidence in rebuttal.

*D. Expert Testimony of Drs. Reedy, Patrick & Beisser*

The Defendants jointly move to exclude the following testimony:

1. The opinions of Dr. Edward Reedy, Dr. James Patrick and Dr. Cynthia Beisser that Carlton Benton's death was a homicide caused by application of the sleeper hold at the Lucas County Jail.

2. The opinions of Dr. Reedy, Dr. Patrick, and Dr. Beisser that the Defendants' had certain "duties" and "responsibilities."

3. The opinions of Dr. Reedy, Patrick, and Beisser from testifying that the manner of death was a "homicide."

4. The testimony of Drs. Reedy, Patrick and Beisser that the 2004 autopsy would have been aided by information allegedly possessed but not disclosed by Defendants McBroom and Telb.

5. Opinions of Drs. Reedy, Patrick and Beisser which rely on testimonial statements of absent witnesses whom the Defendants have not had an opportunity to cross-examine.

Testimony by experts is governed by Fed. R. Evid. 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In support of their motion, Defendants contend exclusion of the above referenced expert testimony is required as the experts' methods are not based on scientifically valid principles or by those methods required by *Daubert v. Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). As there has been no challenge to the qualifications of the proposed experts, the Court finds Drs. Reedy, Patrick and Beisser to be qualified.

The bases of expert testimony is guided by Fed. R. Evid. 703, which states in pertinent part:

> If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence, in order for the opinion or inference to be admitted.

As noted by the government in its opposition, a forensic pathologist takes into account numerous factors, such as reports, medical records, the autopsy, as well as the circumstances surrounding the death, including witness statements, in making a determination as to the cause and/or manner of death. Govt's Opp. at pp. 5-8. Such is perfectly acceptable under Rule 703 if it is the type of information "reasonably relied upon" by coroners or forensic pathologists in forming their opinions. *See e.g., Chavez v. Carranza*, 559 F.3d 486, 497 (6th Cir. ) (social science expert permitted to rely upon interviews and reports as they were the type reasonably relied upon by experts in this field), *cert. denied*, 130 S.Ct. 110 (2009); *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728-729 (6th Cir. 1994) (experts opinion testimony was admissible and could rely upon inadmissible evidence).

The Advisory Committee Notes to 703 offer useful guidance in this regard:

> The third source [of facts or data upon which expert opinions are based] contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining the various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

The admission of the expert *testimony* is distinct from the admission of the information providing the underpinning of the expert opinion as addressed by the third sentence of 703: "Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."

Thus, assuming the three experts here, Drs. Reedy, Patrick and Beisser, generally rely on reports from eyewitnesses, and those experts will testify at trial, then under Fed. R. Evid. 703[1], they may opine based upon those eyewitness statements or reports. The Court further finds that the specialized knowledge of these experts will serve to assist the trier of fact. However, unless the eyewitness testifies at trial, his or her report or eyewitness account shall not, at this juncture of the proceedings, be admissible under the hearsay rule.

In their motion, the Defendants seek to exclude the testimony of the coroners that Carlton Benton's death was caused by the application of a sleeper hold. Defendants challenge this testimony on the basis that it fails to comply with the "scientific knowledge" requirement per *Daubert*. However, as noted by the Supreme Court in *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137 (1999):

*Daubert* pointed out that Federal Rules 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the "assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Id.* at 592, 113 St.Ct. 2786 (pointing out that experts may testify to opinions, including those that are not based on

---

[1] Defendants are correct that the burden is upon the proponent of the testimony to establish its admissibility. If the Defendants are challenging the experts' consideration of such witness statements or reports, it is within their right to request a brief voir dire of the expert outside the presence of the jury. The Court would then determine under Fed. R. Evid. 104(a) whether reasonable reliance exists in this circumstance.

firsthand knowledge or observation). The Rules grant latitude to all experts, not just to the "scientific" ones.

Since under Fed. R. Evid. 703, coroners and pathologists almost always must and do rely on eyewitness accounts in ascertaining the cause of death, they may do so in this instance. *See United States v. Seale*, 600 F.3d 473, 490-491 (5th Cir. 2010) (forensic pathologist testimony on the cause of death was admissible even when based in part upon a third-party witness and complied with *Daubert*). Although the Defendants make a strident argument on the issue of a "scientific" basis, the experts meet the reliability standard as they routinely consider information not ascertained by firsthand knowledge or observation. Such testimony by these experts on the cause of death, by the application of a sleeper hold in the medical cell, is admissible. That is not to say that this testimony may not be vigorously challenged by Defendants on cross-examination. *See United States v. Jones*, 107 F.3d 1147, 1161 (6th Cir. 1997) (admissibility of an opinion under Rule 702 does not preclude challenge to reliability by virtue of cross-examination at trial) (citations omitted). The issue is not one of admissibility, but the weight of the opinion evidence as determined by the jury.

While it is *assumed* that the Defendants would prefer the Court restrict the testimony of the government's expert pathologist to the opinions that the cause of Carlton Benton's death, anoxic encephalopathy, was *consistent* with application of a "sleeper hold," (as contrasted to "the" cause of death), that issue will surely be forcefully asserted through vigorous cross-examination. Thus, the opinions, as outlined above, are appropriate under both Rules 702 and 703, and do not violate *Daubert* and it progeny.

The Defendants also seek to preclude the coroners from testifying that the manner of death was a "homicide" as that term encompasses a legal conclusion which will confuse the jury. This

8

Court disagrees. The government is not offering the coroner's verdict of "homicide" for its legal proposition. Consistent with the grand jury testimony, this Court assumes the prosecution will outline the duties of the coroner, which include specifying the manner of death, explaining each of the five categories including the meaning assigned to them by the coroner [2] and distinguishing the legal meaning. *See, Ferris v. Tennessee Log Homes*, 2010 WL 996737 (6th Cir. 2010) ("As recognized by the Sixth Circuit in *Torres*, "a more carefully phrased question could . . . elicit [ ] similar information and avoid [ ] the problem of testimony containing a legal conclusion."), citing *Torres v. County of Oakland*, 758 F.2d at 151. The Court understands the Defendants' position on the issue of potential confusion. However, in addition to a solid foundation which clearly delineates the available manners of death as considered by a coroner and as a part of his/her job, such a distinction regarding the term "homicide" in the coroner's verdict may also be addressed by a curative instruction during trial and addressed in the jury instructions. As the testimony regarding the coroner's verdict is within the duty/responsibility of the coroner, the experts may testify as to the manner of death under Rule 702. *See Giannetti v. City of Stillwater*, 2006 WL 5100544 (W.D. Okla. 2006).

Regarding Defendants' motion seeking to preclude testimony from the experts on statutory reporting duties, the Court agrees the experts are precluded from testifying as to a legal duty. *See DeMerrel v. City of Cheboygan*, 206 Fed. Appx. 418, 426 (6th Cir. 2006) ( testimony of an expert on a legal conclusion is improper where it suggests the answer to or presents inferences on the ultimate issue), citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). However, the

---

[2] For example, in his expert report Dr. Reedy noted the term "homicide" is a medical classification based upon the circumstances surrounding the death. (Reedy Op. At p. 5.)

9

coroners may testify as to their experience in instances when the death is connected to an institution and their expectations therein. They may not testify as to what the statute requires of law enforcement officials in this regard.

Additionally, any concerns regarding the Sixth Amendments confrontation clause are addressed through cross-examination of the experts as to their opinions. *See United States v. Turner*, 591 F.3d 928, 924 (7th Cir. 2010); *United States v. Winston*, 372 Fed. Appx. 17 (11th Cir. 2010).

To that end, the Court finds that Defendants' motion is denied insofar as the experts may testify that Carlton Benton's death was a homicide caused by the application of a sleeper hold and will be subject to cross- examination. Defendants motion is granted on the issue of precluding the experts from testifying on the Defendants' duties or responsibilities under the statute; however, they may testify as to their experience in similar situations. With regard to the experts' testimony that the manner of death was a "homicide," the Defendants' motion on this issue is denied. Defendants motion on testimony that having the information (as contained in witness statements) that a choke hold was applied would have aided the 2004 autopsy is also denied. Finally, Defendants' motion excluding the experts' opinions relying on testimonial statements of absent witnesses whom the Defendants have not had an opportunity to cross-examine, is denied.

## CONCLUSION

For the reasons stated above, Telb's motion *in limine* (Doc. No. 115) regarding evidence of the 2004 reelection campaign is denied. The government's motion *in limine* (Doc. No. 116) regarding reference to the nature and detail of the victim's alleged crimes is granted. Defendant Schmeltz's motion *in limine* (Doc. No. 120) regarding other crimes, wrongs or bad acts is granted.

Defendants' joint motion regard expert testimony (Doc. No. 127) is granted as to the second branch regarding the Defendants' duties and responsibilities but denied (Doc. No. 127) as to branches one, three, four and five.

        IT IS SO ORDERED.

                                        s/ *David A. Katz*
                                        DAVID A. KATZ
                                        U. S. DISTRICT JUDGE