IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

|                        |  Plaintiff,  |  Case No. 3:09 CR 182 |

-vs-

MEMORANDUM OPINION
AND ORDER

JOHN E. GRAY
JAY M. SCHMELTZ
ROBERT E. MCBROOM
JAMES A. TELB,

Defendants.

KATZ, J.

This matter is before the Court on the Defendants' motion for reconsideration and the

government's opposition thereto.  For the reasons stated below, the Defendants' motion is well

taken and the Court clarifies its earlier decision.

**MOTION FOR RECONSIDERATION**

*A.  Standard*

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil

Procedure, it is often treated as a motion made under Rule 59(e).  *McDowell v. Dynamics Corp. of*

*America*, 931 F.2d 380 (6th Cir. 1991); *Shivers v. Grubbs*, 747 F. Supp. 434 (S.D. Ohio 1990).

The purpose of a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) is to have the

court reconsider matters "properly encompassed in a decision on the merits."  *Osterneck v. Ernst*

*and Whinney*, 489 U.S. 169, 174 (1988).  This rule gives the district court the "power to rectify its

own mistakes in the period immediately following the entry of judgment."  *White v. New*

*Hampshire Dept. of Employment Security*, 455 U.S. 445, 450 (1982).  Generally, there are three

major situations which justify a district court altering or amending its judgment:  "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice."  *In re Continental Holdings, Inc.*, 170 B.R. 919, 933 (Bankr. N.D. Ohio 1994); *Braun v. Champion Credit Union*, 141 B.R. 144, 146 (Bankr. N.D. Ohio 1992), *aff'd*, 152 B.R. 466 (N.D. Ohio 1993); *In re Oak Brook Apartments of Henrico County, Ltd.*, 126 B.R. 535, 536 (Bankr. S.D. Ohio 1991). It is not designed to give an unhappy litigant an opportunity to relitigate matters already decided; nor is it a substitute for appeal.  *Dana Corp. v. United States*, 764 F. Supp. 482, 488-89 (N.D. Ohio 1991); *Erickson Tool Co. v. Balas Collet Co.*, 277 F. Supp. 226 (N.D. Ohio 1967), *aff'd*, 404 F.2d 35 (6th Cir. 1968).

*B.  Discussion*

In this instance, the Defendants seek reconsideration as to Parts I, III and IV of the  Court's decision regarding the experts' testimony.  In the interests of justice and to prevent manifest injustice, the Court grants Defendants' motion for reconsideration to clarify the opinion.

The Defendants take issue with the Court's reliance upon Fed. R. Evid. 703, in the September 3, 2010 Memorandum Opinion, and contend the experts' opinions fail to satisfy the mandates of Fed. R. Evid. 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Specifically, Defendants challenge the lack of a ruling on the scientific reliability of the experts' methodology.

*Daubert* addressed the issue of reliability as follows:

The primary locus of this obligation is Rule 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify.  "*If scientific*, technical, or other specialized *knowledge will assist the trier of fact* to understand the evidence or to determine a fact in issue" an

2

> expert "may testify *thereto*." (Emphasis added.) The subject of an expert's testimony must be "scientific . . . knowledge." The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. The term "applies to any body of known facts or to any body if ideas inferred from such facts or accepted as truths on good grounds," Webster's Third New International Dictionary 1252 (1986). Of course, it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguably, there are no certainties in science. . . But, in order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation- *i.e.*, "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Id.* at 589-590. (Citations and footnotes omitted.) The Court then went onto address the requirement that the expert testimony must assist the trier of fact as a precondition to admissibility before noting:

> Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. See Rules 702 and 703. Presumably, this relaxation of the usual requirement of firsthand knowledge-a rule which represents "a 'most pervasive manifestation' of the common law insistence upon 'the most reliable sources of information,'" Advisory Committee's Notes on Fed. Rule Evid. 602, 28 U.S.C. App., p. 755 (citation omitted)-is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.

*Id.* at 592.

It is undisputed in this case that the choke hold or sleeper hold was administered by Defendant Gray. Certainly, the conclusion reached by the government's experts can be challenged by Defense experts and the Court would expect no less than a vigorous cross-examination by either party. However, the conclusion that the loss of oxygen to the brain was caused by the choke hold is based on the experts' scientific knowledge and experience consistent with their discipline of forensic pathology.

3

An analogous situation occurred in *Bocanegra v. Vicmar Services, Inc.* 320 F.3d 581 (5th Cir.), *cert. denied*, 540 U.S. 825 (2003).   The trial court excluded the testimony of a toxicologist as to effect of the tortfeasor's driving ability for failure to comply with the *Daubert*.  The appellate court found an abuse of discretion in not allowing the expert to testify as to the "possible cognitive impairment resulting from [the tortfeasor's] ingestion of marijuana," *Id*. at 590, despite the fact that the quantity of the drug ingested was unknown.  "The unknown specific THC ingested would go to the weight to be given to [the expert's] testimony, not its admissibility." *Id.* at 589.

Similarly, in the case *sub judice*, the lack of "scientific evidence[1]" regarding the application or length of the choke hold  does not disqualify the experts from opining on the issue. The Court presumes each side's experts will attempt to assist the trier of fact in making this determination.   It is not the admissibility of these "opinions" which should be the focus of this case, but the weight the jury will assign thereto.  It will be for the trier of fact to make the ultimate determination on causation and manner of death, with all expert opinions to be tested on cross-examination.

Alternatively, the coroner's reports are admissible under Fed. R. Evid. 803(9) as records of vital statistics. The coroner may then be allowed to explain the report under Fed. R. Evid. 702 and 703.

---

[1]

  As noted by the Court in *Bocanegra*, " We are mindful that in the tightly controlled environment of a scientific study scientists are able to eliminate many unknowns.  For example, in studies involving any drug, scientists can quantify the dosage ingested by the participants in a study, they can know the quality and quantity of the psychoactive component in the drug, and they can, if they desire, determine the relative ability of a participant to absorb a drug.  The real world, however, does not operate like a controlled study." *Id*. at 589.

Based upon the foregoing, Defendants' motion for reconsideration (Doc. No. 163) is granted and the Court's 3, 2010, Memorandum Opinion and Order (Doc. No. 162) is clarified as follows:   The experts' opinions meet the reliability standard under Fed. R. Evid. 702 and *Daubert*, and those opinions are admissible at trial subject to cross-examination.

IT IS SO ORDERED.

   s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE